DMP:JAM/JGH/CRH

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES KNOWN AND DESCRIBED 580 EAST 22ND STREET, BROOKLYN NEW YORK 11226, APARTMENT #5 AND ALL CLOSED AND LOCKED CONTAINERS | APPLICATION FOR A SEARCH WARRANT FOR ELECTRONIC DEVICES<br><br>Case No. 20 MJ 427 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Bilal Morgan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the premises known and described as 580 East 22nd Street, Brooklyn New York 11226, Apartment #5, and any closed and locked containers found therein, described in Attachment A (the "Target Premises"), for the evidence, fruits and instrumentalities of federal criminal law described in Attachment B.[1]

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since July 2018. Since 2019, I have been assigned to the FBI's Joint Terrorism Task

---

[1] The government previously searched electronic devices recovered from the Target Premises, pursuant to a search warrant authorized by the Honorable Steven M. Gold, United States Magistrate Judge for the Eastern District of New York, on June 4, 2020. CAMOVIC's father, discussed below, was present at the Target Premises on June 4, 2020.

Force ("JTTF"). I have investigated crimes involving, among other things, terrorism and the illegal possession of firearms.

3. The JTTF is investigating DZENAN CAMOVIC and others for an attack on multiple New York City Police Department ("NYPD") officers on or about June 3, 2020. The investigation involves violations of, among other statutes, 18 U.S.C. § 231(a)(3) (obstruction of law enforcement officer related to civil disorder),[2] 18 U.S.C. § 922(g)(5) (possession of a firearm by an illegal alien), 18 U.S.C. § 1951 (Hobbs Act robbery), 18 U.S.C. § 924(c) (discharge of a firearm during a crime of violence) and 18 U.S.C. § 2339B (provision of material support to a foreign terrorist organization) (collectively, the "Subject Offenses")

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Where the contents of documents and written communications are summarized herein, they are done so in sum and substance and in pertinent part unless otherwise indicated.

## JURISDICTION

5. The Target Premises are located in the Eastern District of New York. The Court has the authority to issue the attached warrant pursuant to Federal Rule of Criminal Procedure 41(b)(1), which states that a federal magistrate judge with authority in the relevant

---

[2] Section 231(a)(3) provides, in relevant part: "(3) Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—Shall be fined under this title or imprisoned not more than five years, or both."

2

district has authority to issue a search warrant for property located within that district; and Rule 41(b)(3), which states that a federal magistrate judge has authority to issue a search warrant "in an investigation of domestic terrorism or international terrorism – with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district."

## PROBABLE CAUSE

6. On or about June 3, 2020, at approximately 11:50 p.m., CAMOVIC approached two uniformed NYPD officers in the vicinity of 885 Flatbush Avenue in Brooklyn, New York. Security camera footage from the area shows CAMOVIC walking on Flatbush Avenue toward the intersection of Flatbush and Church Avenues. Upon reaching the corner of Flatbush and Church Avenues, CAMOVIC turned onto Church Avenue, where the two NYPD officers stood on patrol. The surveillance video shows that, upon turning the corner in the direction of the police officers, CAMOVIC immediately stabbed one of the officers in the neck area with a knife he already had in his hand, and then began chasing the second officer, repeatedly and violently stabbing at the officer in a clear attempt to kill him. CAMOVIC then ran back toward the first officer, whom he had already stabbed, and attempted to stab him again.

7. A struggle ensued. Video footage from the officer's body camera shows that CAMOVIC fought for control of the officer's service weapon. CAMOVIC ultimately gained control of the weapon, thereby robbing the officer of his service weapon through the use of force. CAMOVIC can also be heard on body camera video repeatedly yelling "Allahu Akbar" during the attack. Based on my knowledge, training and experience, I know that "Allahu

Akbar" is an Arabic phrase that means "God is the greatest" and has been shouted by perpetrators of violent jihadist attacks during such attacks.

8. After gaining control of the officer's service weapon, CAMOVIC fired multiple shots at several officers, including at one or more officers who responded to the scene. Several officers were wounded as a result of CAMOVIC's attack. CAMOVIC was ultimately shot by responding officers and taken into custody. The officer's service weapon taken and used by CAMOVIC, a SIG Sauer P226 black semiautomatic 9mm handgun, was recovered from the scene.

9. On or about June 9, 2020, the Honorable Sanket J. Bulsara, United States Magistrate Judge for the Eastern District of New York, authorized a search warrant for a residence located in Jeffersonville, New York, to search for and seize several electronic devices. See 20-MJ-426 (under seal) (the "Jeffersonville Search Warrant"). That warrant and associated affidavit in support is attached hereto as Exhibit 1, and incorporated by reference herein.

10. Earlier today, law enforcement conducted a search of the premises in Jeffersonville pursuant to the Jeffersonville Search Warrant. The search of that premises revealed no electronic devices.

11. At or around the time of the search of the Jeffersonville residence, CAMOVIC's father was contacted via phone by members of law enforcement. He advised law enforcement, in sum and substance and relevant part, that members of CAMOVIC's family had removed electronic devices from the Jeffersonville residence. In a subsequent interview, CAMOVIC's father explained, in sum and substance and relevant part, that the

electronic devices they removed from the Jeffersonville residence were moved to their residence in Brooklyn, New York, i.e. the Target Premises sometime after June 4, 2020. CAMOVIC's father stated that these electronic devices were moved to the Target Premises subsequent to the government's prior search of the Target Premises on June 4, 2020.

12. The government now seeks authorization to search for the same electronic devices previously approved in the Jeffersonville Search Warrant, and subject to the same conditions as set forth in the Jeffersonville Search Warrant, at the Target Premises.

## THE TARGET PREMISES

13. The Target Premises is an apartment in a multi-story apartment building located at 580 East 22nd Street in Brooklyn New York. The building exterior is tan with a black door to access the building, and the number "580" above the door. A picture of the front of the apartment building is contained in Attachment A to this affidavit.

14. The Target Premises is located on the first floor of the above-described apartment building, and has the number "5" affixed to a black front door. A picture of the door for the Target Premises is also contained in Attachment A to this affidavit.

15. Based on the information described above, and contained in the affidavit in Exhibit 1, I respectfully submit there is probable cause to search the Target Premises for the electronic devices previously searched for at the Jeffersonville residence pursuant to the Jeffersonville Search Warrant.

## **CONCLUSION AND SEALING**

16. Based on the foregoing, I submit that this affidavit establishes probable cause to search the Target Premises, as described in Attachment A, for the items and evidence listed in Attachment B.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. While CAMOVIC is now aware of the investigation, others, known and unknown, with whom he was potentially in contact about the Subject Offenses may not be aware that the government's investigation will continue beyond the arrest of CAMOVIC. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation. Additionally, the Jeffersonville Search Warrant that is incorporated by reference reveals the participation of an individual, identified as Individual 4 in that affidavit, who provided information regarding CAMOVIC, and release of that information could subject Individual 4 to reprisals and harassment, including intimidation designed to prevent Individual 4's further participation in the government's investigation of CAMOVIC and others.

Respectfully submitted,

BILAL MORGAN
Special Agent, FBI

Subscribed and sworn to me by phone
on June 10, 2020:

THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property to Be Searched

The property to be searched is: the premises known and described as 580 East 22nd Street, Brooklyn New York 11226, Apartment #5, and any closed and locked containers found therein (the "Target Premises"). The Target Premises is an apartment in a multi-story apartment building located at 580 East 22nd Street in Brooklyn New York. The building exterior is tan with a black door to access the building, and the number "580" above the door. The Target Premises is located on the first floor of the above-described apartment building, and has the number "5" affixed to a black front door. Pictures of the exterior of the building and the door of the target premises are depicted below:




**ATTACHMENT B**

      Items to be seized from the Target Premises, all of which constitute evidence or instrumentalities of violations federal criminal law by DZENAN CAMOVIC ("CAMOVIC"), among others, including 18 U.S.C. § 231(a)(3) (obstruction of law enforcement officer related to civil disorder),  18 U.S.C. § 922(g)(5) (possession of a firearm by an illegal alien), 18 U.S.C. § 2339B (provision of material support to a foreign terrorist organization), 18 U.S.C. § 1951 (Hobbs Act robbery), and 18 U.S.C. § 924(c) (discharge of a firearm during a crime of violence), (collectively, the "Subject Offenses"), between January 1, 2019 and June 3, 2020.

1. Computers or storage media, including an Apple MacBook Pro laptop, Apple desktop and Apple iPad.  For any computer or storage medium whose seizure is authorized by this warrant, and any computer or storage medium (such as tablets, laptops, or cellular telephones) that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "Computer"):

    a. evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
    b. Evidence indicating efforts to provide support to or promote the activities of terrorists and foreign terrorist organizations, including by committing acts of violence in support of such organizations, including the Islamic State of Iraq and al-Sham ("ISIS") and al-Qaeda in the Arabian Peninsula ("AQAP");
    c. Evidence, including messages, videos, communications, audio recordings, pictures, video recordings, or still captured images relating to jihadist propaganda, including communications regarding support for extremist attacks and support for violent extremist groups, including AQAP and ISIS;
    d. Evidence regarding CAMOVIC's state of mind, including whether and why he harbored any hostile views toward law enforcement and the NYPD;
    e. Evidence concerning other individuals with whom CAMOVIC had contact in the days leading up to June 3, 2020 attack, including whether those individuals encouraged CAMOVIC to conduct the attack;
    f. Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
    g. evidence of the lack of such malicious software;
    h. evidence indicating how and when the Computer was accessed or used to determine the chronological context of Computer access, use, and events relating to crime under investigation and to the Computer user;
    i. evidence indicating the Computer user's state of mind as it relates to the crime under investigation;

    j.   evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence;
    k.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer;
    l.   evidence of the times the Computer was used;
    m.   passwords, encryption keys, and other access devices that may be necessary to access the Computer;
    n.   documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer;
    o.   records of or information about Internet Protocol addresses used by the Computer;
    p.   records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;
    q.   contextual information necessary to understand the evidence described in this attachment.
    r.   routers, modems, and network equipment used to connect the Computer to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

3